IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Henry Gibbs, Jr.,              :
            Petitioner     :
                            :
     v.                   :
                            :
Pennsylvania Parole Board,    :   No. 308 C.D. 2023
            Respondent  :   Submitted: March 8, 2024

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: April 18, 2024

      Henry Gibbs, Jr. (Gibbs), currently incarcerated at the State Correctional Institution-Forest (SCI-Forest), petitions for review from the March 9, 2023, order of the Pennsylvania Parole Board (Board). The Board upheld its initial April 7, 2022, order recalculating Gibbs's maximum sentence date based on his conviction as a parole violator. Gibbs's appointed counsel, Gary Knaresboro, Esquire, of the office of the Elk County Public Defender (Counsel), has filed an application to withdraw, and Gibbs has filed two motions to proceed *pro se*. Upon review, we grant Counsel's application to withdraw, dismiss Gibbs's motions as moot, and affirm the Board's order.

## I. Factual & Procedural Background

      In 1994, Gibbs pleaded guilty to aggravated assault and was sentenced to 5-20 years in prison, with a minimum release date of February 1, 1999, and a

maximum release date of February 1, 2014. Certified Record (C.R.) at 6.[1] He was released on parole on September 22, 2003, and permitted to move to Illinois in February 2004. *Id*. at 12, 30-32 & 60. In December 2006, while in Illinois, he assaulted a girlfriend and an elderly woman in two incidents, after which he evaded capture until September 2008. *Id*. at 15 & 60. In January 2007, between those incidents and his arrest, he committed an armed robbery of an elderly woman in Mississippi; he ultimately pleaded guilty to all three offenses. *Id*. at 17 & 60. As a result, he was incarcerated in Illinois from September 2008 through March 2015, which included his pre-sentence incarceration between September 2008 and his sentencing in January 2013. *Id*. at 59, 73 & 93. He was then transferred to Mississippi for further incarceration until January 5, 2022, when he was returned to Pennsylvania for parole revocation proceedings. *Id*.

On March 3, 2022, Gibbs waived his right to a parole revocation hearing in Pennsylvania and admitted that his convictions in Illinois and Mississippi violated multiple conditions of his 2003 parole. C.R. at 17-24 & 57. A hearing officer returned Gibbs to prison as a convicted parole violator. *Id*. at 62-69. His maximum sentence date was recalculated to require him to serve the balance of his original sentence without credit for time at liberty during his parole (between his September 2003 release and his September 2008 arrest). *Id*. at 62-69. On April 7, 2022, the Board issued an initial decision and order confirming that his new maximum date for release was March 18, 2032. *Id*. at 62-69 & 85-88.

Gibbs filed a timely administrative appeal asserting that he should have received credit for the time he served for his Illinois and Mississippi offenses. C.R. at 89. In a March 9, 2023, decision and order, the Board explained that Gibbs was

---

[1] Certified Record references are to electronic pagination.

not eligible for credit for time at liberty on parole pursuant to Section 6138(a)(2) of the Prisons and Parole Code (Parole Code),[2] 61 Pa.C.S. § 6138(a)(2). *Id.* at 92. The Board also explained that Gibbs was not eligible for credit for time served during his commitment in Illinois and Mississippi pursuant to Section 6138(a)(5.1) of the Parole Code, which treats time served in another jurisdiction and time served after recalculation of a maximum sentence date as separate periods. *Id.* at 94.

Accordingly, the Board opined that Gibbs was not available to begin serving the remainder of his original sentence until he was transferred from Mississippi to Pennsylvania on January 5, 2022. C.R. at 93-94. When he was released on parole in September 2003, he still had 3,785 days remaining on his original sentence. *Id.* at 92. When his sentence was recalculated in 2022, he received credit for 60 days between the end of his sentence in Illinois and his sentencing in Mississippi, during which he was in custody solely on the Board's detainer for his parole violations; this reduced his original remaining sentence to 3,725 days. *Id.* at 93-94. Adding the remaining 3,725 days from his original sentence to January 5, 2022, resulted in a new maximum release date of March 18, 2032. *Id.* The Board added that Gibbs's recalculated maximum sentence date violated no constitutional provisions. *Id.* at 92. As such, the Board affirmed the April 7, 2022, determination.

Gibbs timely petitioned this Court *pro se* for review, reiterating that because the time he spent in Illinois and Mississippi prisons coincided with Pennsylvania's detainer on him, he should receive credit for time served during those imprisonments. Petition for Review at 5-8. He added that the recalculation of his maximum sentence violated constitutional separation of powers principles because it was imposed by the Board rather than a judge. *Id.* Gibbs also asserted that his

---

[2] 61 Pa.C.S. §§ 101-7301.

3

new sentence violated various other constitutional principles, including due process, cruel and unusual punishment, *ex post facto*, and equal protection. *Id.*

On April 20, 2023, this Court granted Gibbs's application to proceed *in forma pauperis* and appointed the Forest County Public Defender to serve as his counsel. Order, Apr. 20, 2023, at 1. Counsel for the Board entered an appearance in this matter on April 19, 2023, but has filed nothing since then. Entry of Appearance, Apr. 19, 2023. On April 28, 2023, Gibbs filed a "notice" with this Court asserting that he did not trust the Forest County Public Defender as that office allegedly led him to believe it was representing him before the Board in 2022, then failed to do so.[3] Notice, Apr. 28, 2023.

On May 4, 2023, the Forest County Public Defender filed with this Court an application to withdraw as counsel and a *Turner* letter[4] that had also been sent to Gibbs. Forest County Public Defender's *Turner* Letter, May 4, 2023. The letter stated that Gibbs's allegations were meritless, and that the recalculation of his maximum sentence date violated no constitutional protections. *Id.* On May 5, 2023, this Court issued an order stating that it construed Gibbs's April 28, 2023, filing to be an allegation of ineffective assistance of counsel on the part of the Forest County Public Defender. Order, May 5, 2023. This Court therefore appointed the Elk

---

[3] To this filing, Gibbs attached letters sent to him in September and October of 2022 by the Forest County Public Defender while his administrative appeal was pending before the Board prior to the Board's March 9, 2023, decision and order. Notice, Apr. 28, 2023. The letters stated that the office had not been contacted in time to file anything on Gibbs's behalf to the Board and that the only action it could undertake would be to represent him on appeal to this Court once the Board issued a final decision. *Id.*

[4] Through this type of letter, based on *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), an attorney may seek to withdraw from representation of a parole violator where "the [violator's] case lacks merit, even if it is not so anemic as to be deemed wholly frivolous." *Anderson v. Pa. Bd. of Prob. & Parole*, 237 A.3d 1203, 1205 (Pa. Cmwlth. 2020).

County Public Defender to represent Gibbs.[5] *Id.* On May 22, 2023, Counsel entered his appearance in this Court. Praecipe to Enter Appearance. On May 23, 2023, this Court issued a briefing schedule setting a July 3, 2023, deadline for Counsel's brief. Notice of Briefing Schedule, May 23, 2023.

On August 2, 2023, after an extension, Counsel filed with this Court an application to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).[6] Application to Withdraw & *Anders* Brief, Aug. 2, 2023. Counsel stated that he met with Gibbs at SCI-Forest and advised Gibbs that he planned to file an amended petition, but Gibbs "strongly objected" to that course of action, so Counsel had not filed an amended petition. *Anders* Br. at 6. Counsel asserted that based on his review of the record and relevant law, the issues in Gibbs's *pro se* petition to this Court entailed no constitutional violations and were meritless. *Id.* at 7-10.

On August 7, 2023, this Court issued an order acknowledging Counsel's filings and stating that the matter would be considered along with the merits of Gibbs's petition. Order, Aug. 7, 2023. The order stated:

> [Gibbs] may, within 30 days after service of this Order on [Gibbs] by Counsel, either[:]
>
> (1) Obtain substitute counsel at his own expense and have new counsel enter an appearance and file four copies of a brief in support of the Petition for Review, and serve on

---

[5] The Forest County Public Defender's filings were dismissed as moot. Order, May 8, 2023.

[6] Where there is a constitutional right to counsel, pursuant to *Anders v. California*, 386 U.S. 738 (1967), court-appointed counsel seeking to withdraw must submit a brief that (1) summarizes the procedural history and facts with citations to the record; (2) refers to anything in the record that counsel believes arguably supports the appeal; (3) sets forth counsel's conclusion that the appeal is frivolous; and (4) states counsel's reasons for concluding that the appeal is frivolous. *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

[the Board] one copy of the brief in support of the Petition for Review[;] OR

(2) On his own behalf, file four copies of a brief in support of the Petition for Review and serve on [the Board] one copy of the brief in support of the Petition for Review.

*Id*. On August 11, 2023, Counsel filed with this Court a certificate of service by mail of the order upon Gibbs. Certificate of Service, Aug. 11, 2023. As Gibbs had 30 days from Counsel's August 11, 2023, service of the August 7, 2023, order, his brief was due on September 11, 2023.[7]

Also on August 11, 2023, Gibbs filed with this Court a "Notice" dated August 8, 2023, stating that he received Counsel's application to withdraw and *Anders* brief. Notice & Attachments, Aug. 11, 2023. Gibbs asserted that Counsel lied in those filings and did not act in his best interests. *Id*. at 1-2. Gibbs asserted that he wanted Counsel to raise additional arguments, but Counsel refused to do so. *Id*. First, Gibbs asserted that the DC-300b commitment form[8] from his original sentencing in 1994, which is not of record in this matter, stated that his sentence was to "run concurrent to any existing sentences." *Id*. at 5-6. Therefore, Gibbs argued that his original sentence was running during his subsequent incarcerations in Illinois and Mississippi and he should have received credit for time served in those states. *Id*. at 8. Gibbs also asserted that his original guilty plea and sentence in 1994 was a legally binding agreement between himself, the prosecutor, and the trial court, and

---

[7] September 10, 2023, was a Sunday.

[8] The DC-300B commitment form, despite its Department of Corrections designation, is generated by the trial court and contains an inmate's criminal offenses, the disposition of those offenses, and the sentence imposed for those offenses. *Commonwealth v. Heredia*, 97 A.3d 392, 394 n.3 (Pa. Super. 2014). When an inmate is transferred into custody of the Department of Corrections, the transporting official provides the Department with copies of the trial court's sentencing order and the DC-300B commitment form. *Id*.

6

that the recalculation of his maximum sentence date violated the United States Constitution's provision that states may not pass laws "impairing the obligation of contracts." *Id*. at 6-7 (citing U.S. CONST. art. I, § 10).

Then, on August 31, 2023, Gibbs filed with this Court a "Motion to Seek Permission to Represent Myself as *Pro Se* in this Case." Motion, Aug. 31, 2023. Gibbs attached a copy of this Court's August 7, 2023, Order and asked this Court for "permission" to represent himself. *Id*. at 1. On September 11, 2023, this Court issued a further order stating that Gibbs's motion to proceed *pro se* would be decided with Counsel's application to withdraw. Order, Sept. 11, 2023. Gibbs did not file a brief by September 11, 2023, as directed in this Court's August 7, 2023, Order; nor did he timely seek an extension to do so. Instead, on October 16, 2023, Gibbs filed an "Amended Motion to Proceed *Pro Se* in this Action." Amended Motion, Oct. 16, 2023. He averred that both appointed counsels had declined to represent him and present the issues he wished to pursue and, therefore, he wished to represent himself. *Id*. at 2-6.

This Court issued an order on October 27, 2023, stating that Gibbs's amended motion would be considered with Counsel's application to withdraw. Order, Oct. 27, 2023. This matter is now ripe for determination.

## II. Discussion

### A. *Anders/Turner*

In *White v. Pennsylvania Parole Board*, 276 A.3d 1247 (Pa. Cmwlth. 2022), this Court set forth the requirements when court-appointed counsel seeks to withdraw from representation:

> Counsel must notify the inmate of [counsel's] request to withdraw, furnish the inmate with a no-merit letter

7

satisfying the requirements of [*Turner*] or a copy of an *Anders* brief, and inform the inmate of his right to retain new counsel or submit a brief on his own behalf. Where an *Anders* brief is filed when a no-merit letter would suffice, the *Anders* brief must at least contain the same information that is required to be included in a no-merit letter. A no-merit letter must include an explanation of the nature and extent of counsel's review, and list each issue the petitioner wished to have raised, with an explanation of why those issues are meritless. Once counsel fully complies with the procedural and substantive requirements to withdraw, this Court will then independently review the merits of the petitioner's claims. If the Court agrees with counsel, we will permit [counsel] to withdraw.

*Id.* at 1254 (citations & quotation marks omitted).

Here, Counsel's August 2, 2023, *Anders* brief summarized the relevant facts and procedural history and listed the documents Counsel reviewed. *Anders* Br. at 6-8. Counsel served Gibbs with the *Anders* brief and petition to withdraw via mail, receipt of which Gibbs confirmed in his August 11, 2023, "Notice to the Court." Certificates of Service, Aug. 2, 2023; Notice, Aug. 11, 2023. Lastly, Counsel explained why all of the issues Gibbs raised in his petition for review are meritless, doing so with references to relevant caselaw and statutes. *Anders* Br. at 6-10. Specifically, Counsel asserted that because the recalculation of Gibbs's maximum sentence date included only the balance of his original sentence, it complied with Section 6138 of the Parole Code and did not violate separation of powers principles. *Id.* at 9-10. Counsel added that Gibbs was not subjected to retroactive additional punishment; therefore, the recalculation did not violate *ex post facto* principles. *Id.* Counsel found no additional issues with potential merit. *Id.* at 7-8. Counsel's *Anders* brief therefore complied with the procedural requirements for withdrawal. In the following section, we will conduct an independent analysis

8

of the issues raised in Gibbs's petition for review to determine whether his appeal is, in fact, without merit. *White*, 76 A.3d at 1255.

We also consider Gibbs's motions to proceed *pro se*. On August 7, 2023, this Court executed the above-quoted order explaining that in light of Counsel's *Anders* brief and application to withdraw, Gibbs was entitled to secure new counsel or proceed on his own behalf; in either instance, he was directed to file a brief on the merits within 30 days of service of the order upon him by Counsel. Order, Aug. 7, 2023. Counsel served the August 7, 2023, order on Gibbs by mail on August 11, 2023, which resulted in a September 11, 2023, deadline for Gibbs's brief. Certificate of Service, Aug. 11, 2023. Gibbs's subsequent August 31, 2023, motion to proceed *pro se* acknowledged receipt of the August 7, 2023, Order, and although that order allowed him to proceed *pro se*, he again asked this Court for permission to do so. Motion to Proceed *Pro Se*, Aug. 31, 2023. However, Gibbs did not seek a briefing extension or file a brief by September 11, 2023. Instead, on October 16, 2023, he filed an amended motion to proceed *pro se*, reiterating the argument from his August 11, 2023, filing that his recalculated sentence violated the United States Constitution's provision that no state shall pass any law "impairing the obligation of contracts." Amended Motion, Oct. 16, 2023, at 2-6 (citing U.S. CONST. art. I, § 10). Given Counsel's application to withdraw and our August 7, 2023, order expressly allowing Gibbs to proceed *pro se*, his subsequent motions to proceed *pro se* are moot.

### B. Substantive Claims

"The law is well settled that issues not raised before the Board either at the revocation hearing or in the petitioner's administrative appeal are waived and

cannot be considered for the first time on appeal." *Thomas v. Pa. Parole Bd.*, 304 A.3d 810, 814 (Pa. Cmwlth. 2023) (quoting *Chesson v. Pa. Bd. of Prob. & Parole*, 47 A.3d 875, 878 (Pa. Cmwlth. 2012). Gibbs's administrative appeal stated: "By law, the [Board] cannot extend my max without the court's intervention. When I started my sentence in the state[s] of Illinois and Mississippi, I should have gotten credit for that time. I feel that I'm in prison illegal[ly]." C.R. at 89. Although Gibbs did not raise specific statutory or constitutional issues in his administrative appeal, he checked the box on the form indicating that the appeal included "whether an error of law has been committed" or "constitutional law has been violated[.]" *Id.* Therefore, we will consider the issues raised in Gibbs's *pro se* petition for review to the extent that they pertain to his underlying claim seeking credit for the time he spent serving his Illinois and Mississippi sentences.

### 1. Section 6138 of the Parole Code

Gibbs argues that the Board erred in declining credit to him for the time he spent serving his sentences in Illinois and Mississippi between September 2008 and January 2022.[9] Petition at 4. He asserts that while he was serving those sentences, he was also subject to Pennsylvania's detainer for his parole revocations and, therefore, that time should be credited to his original Pennsylvania sentence. Petition for Review at 4-7.

Section 6138(a) of the Parole Code states:

(1) The board may, at its discretion, revoke the parole of a paroled offender if the offender, during the period of

---

[9] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. *Miskovitch v. Pa. Bd. of Prob. & Parole*, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013).

10

parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the offender is convicted or found guilty by a judge or jury or to which the offender pleads guilty or *nolo contendere* at any time thereafter in a court of record.

. . . .

(2) If the offender's parole is revoked, the offender shall be recommitted to serve the remainder of the term which the offender would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

. . . .

(5.1) If the offender is sentenced to serve a new term of total confinement by a Federal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), the offender shall serve the balance of the original term before serving the new term.

61 Pa.C.S. § 6138(a)(1), (2), (5.1).[10]

As a preliminary matter, subsection (2.1), as referenced in subsection (2), allows the Board discretion to award credit under certain circumstances, but not when the new offense is a crime of violence. 61 Pa.C.S. § 6138(a)(2.1). Gibbs's new offenses in Illinois (assault) and Mississippi (armed robbery) were both crimes of violence and, therefore, the Board had no discretion to credit Gibbs for his time at liberty before his September 2008 arrest in Illinois. Next, the requirement in Section 6138(5.1) that a parole violator must serve his original Pennsylvania term prior to his new term in another jurisdiction has been held inapplicable where the

_____

[10] Subsection (a)(5) of Section 6138, 61 Pa.C.S. § 6138(a)(5), pertains to the recalculation of maximum sentence dates for parole violations that occur within Pennsylvania and is not relevant here.

11

parole violator's original sentence preceded Section 6138(5.1)'s 2010 enactment date. *Dill v. Pa. Bd. of Prob. & Parole*, 186 A.3d 1040, 1046 (Pa. Cmwlth. 2018). Gibbs's original conviction and sentencing occurred in 1994, and, therefore, his completion of his sentences in Illinois and Mississippi prior to his January 2022 return to Pennsylvania and subsequent recalculation of his maximum sentence date did not violate Section 6138(a)(5.1).

Our Supreme Court has stated that "where an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to *either* the new sentence *or* the original sentence." *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 309 (Pa. 2003) (emphasis added). As such, a parole violator cannot receive credit on the original Pennsylvania sentence while the new sentence, whether in another state or in federal custody, is being served. *Stroud v. Pa. Bd. of Prob. & Parole*, 196 A.3d 667, 677 (Pa. Cmwlth. 2018) (holding that "Stroud has not cited to and this Court has not found any legal authority under which the Board could credit Stroud's original sentence for the entire time he spent in federal custody from his July 10, 2012 sentencing until his October 28, 2016 release[.]"); *see also Thirkfield v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 210 C.D. 2018, filed Oct. 1, 2018), slip op. at 10, 2018 WL 4690182, at *5 (unreported) (holding that the parole violator "was required to serve his Michigan sentence first and is not entitled to double credit for that time against his original Pennsylvania sentence[.]").[11]

Gibbs committed two assaults in Illinois in December 2006 while paroled with permission to live in that state. C.R. at 93. He evaded capture and went

_____

[11] Under Section 414(a) of this Court's Internal Operating Procedures, an unpublished memorandum opinion of this Court issued after January 15, 2008, although not binding precedent, may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

12

to Mississippi, where he committed armed robbery in January 2007. *Id.* On September 25, 2008, he was arrested in Illinois for the December 2006 assaults while also on a Pennsylvania detainer for parole violations. *Id.* In January 2013, he was sentenced for those offenses in Illinois, including credit for his pre-sentence incarceration there. *Id.* Upon his completion of that sentence in March 2015, he was transported to Mississippi and incarcerated there through January 2022 for the January 2007 armed robbery. *Id.* At no time between September 2008 and January 2022 was he on bail, paroled, or otherwise at liberty. *Id.*

After Gibbs was returned to Pennsylvania in January 2022 for parole revocation proceedings and recalculation of his maximum sentence date, he received credit for 60 days in custody solely on the Board's detainer between the completion of his Illinois sentence on March 1, 2015, and his Mississippi sentencing on April 29, 2015. C.R. at 93. That reduced the remainder of his unserved original Pennsylvania sentence from 3,785 days to 3,725 days. *Id.* at 93-94. Given the foregoing analysis, Gibbs was not entitled to any additional credit for the time he served in Illinois or Mississippi. As the Board found, adding 3,725 days to January 5, 2022, results in a maximum release date of March 18, 2032. The Board, therefore, complied with Section 6138(a) of the Parole Code when recalculating Gibbs's sentence after his parole violation, and Gibbs's claim is meritless.

## 2. Separation of Powers

Gibbs next argues that the recalculation of his maximum sentence date violated separation of powers principles because it was imposed by the Board and not a court. Petition at 4 & 6. This Court recently collected cases evaluating this

13

issue in *Edmondson v. Pennsylvania Parole Board* (Pa. Cmwlth., No 723 C.D. 2020, filed July 13, 2022), 2022 WL 2713204 (unreported):

> It is well settled that the [Board] does not violate the separation of powers doctrine when it recalculates a [parole violator's] maximum sentence date. *Davidson v. Pa. Bd. of Prob. & Parole*, 33 A.3d 682, 685-86 (Pa. Cmwlth. 2011). Pursuant to Section 6138(a)(1) of the Parole Code, the [Board] has the statutory authority to recalculate a sentence where a parolee violates the terms of parole. 61 Pa. C.S. § 6138(a)(1); *Young v. Pa. Bd. of Prob. & Parole*, 409 A.2d 843, 848 (Pa. 1979). The [Board's] authority to recalculate a sentence is only limited in the sense that the [parole violator] cannot serve more time than he would have served had the [Board] not released him on parole. *Commonwealth ex rel. Banks v. Cain*, 28 A.2d 897, 902 (Pa. 1942). In *Gaito v. Pennsylvania Board of Probation and Parole*, 412 A.2d 568, 570 (Pa. 1980), our Supreme Court stated: "when the [Board] refuses to credit a [parole violator] with time spent free on parole there is neither a usurpation of the judicial function of sentencing nor a denial of the procedural safeguards to which persons are entitled."
>
> In [*Young*], our Supreme Court explained that the [Board's] recalculation of a [parole violator's] maximum sentence is not a modification of his judicially imposed sentence. Instead, it is a requirement that he serve his entire original sentence. *Id.* Our Supreme Court has also explained that it is not the specific maximum sentencing date imposed by a court that is controlling, but the duration of the sentence ordered. *Commonwealth ex rel. Banks*, 28 A.2d at 901. Thus, the [Board] does "not . . . unlawfully extend[ ] the term of [a] maximum sentence [by recalculating the maximum sentencing date], but . . . merely withdraw[s] from [a parole violator] credit for the time he was at liberty on parole[.]" *Com. ex rel. Ohodnicki v. Pa. Bd. of Prob. & Parole*, 211 A.2d 433, 435 (Pa. 1965).

*Id.*, slip op. at 4-5, 2022 WL 2713204, at \*2.

14

As set forth above, Gibbs's original sentence from 1994 had 3,785 days remaining. Less a 60-day credit for the time in 2015 that Gibbs spent in custody between completing his Illinois sentence and receiving his Mississippi sentence, Gibbs's sentence had 3,725 days remaining. Calculating from January 5, 2022, when Gibbs was returned from Mississippi to Pennsylvania, his new maximum date will be March 18, 2032. Gibbs has not challenged the Board's arithmetic calculations or asserted that his new sentence includes more time than his original sentence. Therefore, the Board's recalculated sentence does not violate separation of powers principles and Gibbs's claim is meritless.

### 3. Cruel and Unusual Punishment.

Gibbs next argues that the recalculation of his maximum sentence date constitutes cruel and unusual punishment. Petition at 5. This Court has consistently held that so long as the Board recalculates a parole violator's sentence in accordance with Section 6138 of the Parole Code and does not increase it beyond the original sentence's duration, no violation of the prohibition against cruel and unusual punishment has occurred. *Staton v. Pa. Bd. of Prob. & Parole*, 171 A.3d 363, 367 (Pa. Cmwlth. 2017); *see also Young*, 409 A.2d at 846-47 n.8 (concluding that denial of credit in recalculating maximum sentence date "does not constitute an enhancement of a sentence so as to raise federal constitutional implications"). Gibbs presents no contrary authority or reasoning to disturb this settled line of decisions and, therefore, his claim is meritless.

#### 4. *Ex Post Facto*

Gibbs next argues that the recalculation of his maximum sentence date violates *ex post facto* principles because his sentence has been significantly increased. Petition at 5. A prohibited *ex post facto* law "imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to that then prescribed." *Cimaszewski v. Pa. Bd. of Prob. & Parole*, 868 A.2d 416, 422 (Pa. 2005). There are two critical elements of an *ex post facto* violation: (1) the law must be retrospective, and (2) it must disadvantage the offender. *Id*. at 423.

Imposition of the balance of a parole violator's original sentence does not amount to an increased sentence that disadvantages the offender in violation of *ex post facto* principles. *Gundy v. Pa. Bd. of Prob. & Parole*, 478 A.2d 139, 141 (Pa. Cmwlth. 1984) (stating that "[w]hen imposing backtime, the [B]oard directs a parolee to complete the original judicially[ ]mandated sentence, and does not impose any additional sentence on the parolee[.]"); *see also Young*, 409 A.2d at 846-47 n.8 (concluding that "denial of credit does not constitute an enhancement of a sentence so as to raise federal constitutional implications" and citing with approval cases holding that the denial of credit does not violate *ex post facto* principles). Gibbs presents no contrary authority or reasoning to disturb this settled line of decisions, nor does he assert that in recalculating his maximum sentence date, the Board applied any laws in a retrospective manner. Therefore, his claim is meritless.

#### 5. **Due Process and Equal Protection**

Lastly, Gibbs argues that the recalculation of his maximum sentence date violates due process principles because his liberty interest was taken away

without a hearing. Petition at 7. A parole violator's valid signature of revocation hearing paperwork negates claims sounding in procedural due process. *McKenzie v. Pa. Bd. of Prob. & Parole*, 936 A.2d 616, 618-21 (Pa. Cmwlth. 2009). The record includes Gibbs's March 2022 parole revocation documentation, including his signed forms acknowledging that he received notice of his parole revocation, recalculation of his maximum sentence, and right to a hearing, and that he elected to waive them "of my own free will, without any promise, threat, or coercion." C.R. at 17-21. Gibbs has not argued that his waiver was flawed in any way. As such, his due process claim is meritless.

Gibbs also asserts that the recalculation of his maximum sentence date violated equal protection principles. Petition at 7. He did not plead any facts in his petition to support a claim that with regard to the recalculation, he was subjected to disparate treatment based on his membership in a particular class or was treated differently from any other inmate seeking parole. *See McGinley v. Pa. Bd. of Prob. & Parole*, 90 A.3d 83, 88-89 n.4 (Pa. Cmwlth. 2014). As such, his equal protection claim is meritless.

### 6. Additional Claims

Gibbs raised three additional issues in his August 11, 2023, "notice" to this Court. Notice, Aug. 11, 2023, at 5-10. The law is well settled that issues not raised in a petition for review are waived. *Chesson*, 47 A.3d at 878. As such, Gibbs's additional issues not raised in his petition for review are waived. However, for purposes of completeness, we will briefly address the merits of these issues.

17

### a. DC-300b Commitment Form

Gibbs states that the DC-300b commitment form from his original sentencing in 1994 indicated that his sentence was to run "concurrent to any existing sentences." Notice, Aug. 11, 2023, at 5-6 & 8. He argues that this meant that his original Pennsylvania sentence began to run again "concurrently" while he was serving his Illinois and Mississippi sentences. *Id*. at 8. As noted, Gibbs's original DC-300b form is not in the record of this matter. Nevertheless, the DC-300b form is a statutorily limited document:

> [F]orm DC-300b does not constitute part of the trial court's sentencing order; rather, it is simply a document generated by the Common Pleas Criminal Court Case Management System that must be provided to the Department of Corrections (DOC) upon the commitment of an inmate. *See* 42 Pa.C.S. § 9764(a). The written sentencing order, signed by the trial judge, constitutes the sentence imposed by the court.

*Commonwealth v. Motley*, 177 A.3d 960, 962 (Pa. Super. 2018).[12] Accordingly, the DC-300b form serves as supporting documentation to a judicial sentencing order. *See Dunbar v. Wetzel* (Pa. Cmwlth. No. 337 M.D. 2019, filed Aug. 30, 2021), slip op. at 4, 2021 WL 3852307, at *2 (unreported) (stating that contents of DC-300b commitment forms "derive from the sentencing court's order[.]"). Gibbs has not provided authority or any other basis to conclude that the DC-300b form associated with an original sentence provides or commemorates any rights or privileges on its own, much less may serve as the basis for leniency or credit in a future parole revocation matter. Therefore, his claim is meritless.

---

[12] Although Superior Court decisions are not binding on this Court, they may offer persuasive precedent where they address analogous issues. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

18

### b. Contracts Clause

Gibbs next argues that his original guilty plea and sentencing in 1994 were the result of a contract between himself, the prosecutor, and the trial court, and that the 2022 recalculation of his maximum sentence date violated the U.S. Constitution's provision that states may not pass laws "impairing the obligation of contracts." Notice, Aug. 11, 2023, at 6-7 (citing U.S. CONST. art I, § 10). This Court addressed this issue in *Staton*:

> Contract principles are indeed implicated in the plea agreement process. An offer from the Commonwealth seeking a defendant's plea of guilty can form a contract as in any other circumstance, whether accepted through a written plea agreement or by the defendant's performance in entering the guilty plea. Once the contract is formed, its terms must be fulfilled. . . . However, as we explained in addressing Staton's first issue, he did receive the benefit of whatever bargain he was entitled to, regardless of the Board's recalculation of his original sentence. *The parties to such a contract are the defendant and the Commonwealth, not the Board. Any suggestion that the Board has a contractual duty to Staton is thus misplaced. As such, Staton's breach of contract argument is without merit.*

171 A.3d at 366-67 (citation omitted; emphasis added). Moreover, when an individual is released on parole and signs the requisite documentation, the conditions for parole do not constitute a further contract involving the Board; rather, the signature confirms the inmate's acknowledgement of the Board's statutory authority to recommit him as a parole violator to serve the remainder of his original sentence. *Deas v. Talaber* (Pa. Cmwlth., No. 755 C.D. 2020, filed Apr. 27, 2021), slip op. at 11, 2021 WL 1625404, at *5 (unreported) (citing *Currie v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 206 C.D. 2019, filed Aug. 16, 2019), slip op. at 8-9).

19

Here, Gibbs's original plea agreement in 1994 entailed contract principles binding himself, the prosecution, and the original sentencing court. *Staton*, 171 A.3d at 366-67. He received the benefit of that bargain, leading up to his release on parole in September 2003. C.R. at 9-14. In light of *Staton* and *Deas*, the 2022 recalculation of Gibbs's maximum sentence date, which required him to serve the balance of his original sentence, breached no aspect of his original 1994 plea bargain agreement. Rather, the recalculation of his maximum sentence date represented the Board's authority to recommit him as a parole violator who breached the conditions of his parole when he committed violent offenses in Illinois and Mississippi while at liberty. Therefore, his claim is meritless.

### c. Time at Liberty on Parole Prior to Arrest on New Offenses

Lastly, Gibbs argues in his August 11, 2023, "notice" filing that when his maximum sentence date was recalculated, he should have received credit for the time he was at liberty between September 22, 2003, when he was released on parole, and September 25, 2008, when he was arrested in Illinois for the two assaults he committed in December 2006. Notice, Aug. 11, 2023, at 10. Gibbs cites *Howie v. Byrd*, 396 F. Supp. 117 (W.D.N.C. 1975), *rev'd* 532 F.2d 750 (4th Cir. 1976). That case addressed the constitutionality of a maximum sentence date recalculation after conduct by the parolee that was not criminal but nevertheless violated his parole; the district court held that his time at liberty should be credited to the original sentence, limiting the disposition to those facts. *Id.* at 123-24. However, that opinion was reversed and remanded by the Fourth Circuit Court of Appeals (in an unpublished opinion); as such, it is not controlling here on the facts or as a matter of law.

Our precedent states that the Board may, in its discretion, award credit to a convicted parole violator for the time spent at liberty on parole, unless any of the following apply:

> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence or a crime listed under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders).
>
> (ii) The offender was recommitted under section 6143 (relating to early parole of offenders subject to Federal removal order).

61 Pa.C.S. § 6138(a)(2.1)(i), (ii). Here, Gibbs's new offenses in Illinois (assault) and Mississippi (armed robbery) were both crimes of violence. Therefore, the Board had no discretion to credit Gibbs for the time he was at liberty before his September 2008 arrest in Illinois. As such, his claim is meritless.

### III. Conclusion

Based on the foregoing, we grant Counsel's application to withdraw and dismiss Gibbs's motions to proceed *pro se* as moot. Further, as Gibbs's appeal is meritless, we affirm the Board's order recalculating Gibbs's sentence.

_____
CHRISTINE FIZZANO CANNON, Judge

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Henry Gibbs, Jr., :
                 Petitioner :
                 :
         v. :
                 :
Pennsylvania Parole Board, : No. 308 C.D. 2023
               Respondent :

# **O R D E R**

AND NOW, this 18th day of April 2024, the application to withdraw filed by Gary Knaresboro, Esquire, of the Elk County Public Defender's Office, is GRANTED.  The motion to proceed *pro se* and amended motion to proceed *pro se*, both filed by Henry Gibbs, Jr., are DISMISSED as moot.  The March 9, 2023, order of the Pennsylvania Parole Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge